# UNITED STATES BANKRUPTCY COURT
## District of Colorado

| | |
|---|---|
| In re: RENT-RITE SUPER KEGS WEST LTD <br><br> Debtor. <br><br> RENT-RITE SUPER KEGS WEST LTD, <br><br> Plaintiff <br><br> WORLD BUSINESS LENDERS, LLC, <br><br> Defendant | Case No. 17-21236 TBM <br><br> Chapter 11 <br><br><br> Adv. Proc. No. 18-1099-TBM |

**PLAINTIFF RENT-RITE SUPER KEGS WEST, LTD'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Rent-Rite Super Kegs West, Ltd.'s ("Plaintiff" or "Rent-Rite"), by and through undersigned counsel, hereby submits the following Response in Opposition to Defendant's Motion for Summary Judgment.

## I.  INTRODUCTION

The crux of this case is the filing of a Proof of Claim by Defendant World Business Lenders, LLC ("Defendant" or "WBL"), wherein the claim alleges an interest rate in excess of Colorado usury laws. The Deed of Trust that forms the basis of WBL's claim is based on a promissory note that contains a usurious interest rate of 120.86%, well in excess of the 45% allowed under Colorado law. The Deed of Trust contains a choice of law provision of the jurisdiction in which the real property is located, which is Colorado. WBL asserts that the choice of law provision set forth in the promissory note controls, which law would be Wisconsin. Rent-

1

Rite is not a party to the Promissory Note, and therefore the ultimate relief sought by Rent-Rite in this case is the release of the Deed of Trust liability reflecting the usurious charge of interest.[1]

## II. RESPONSE TO UNDISPUTED FACTS

1. Admitted. (Adversary Complaint at ¶ 1 and Answer at ¶ 1.)

2. Rent-Rite admits the Promissory Note and Security Agreement (the "Note") was executed on April 19, 2016 in the principal amount of $555,000, and that the Note was between CMS Facilities Maintenance, Inc. ("CMS") as Borrower and the Bank of Lake Mills as Lender. (Adversary Complaint at ¶ 11 and Answer at ¶ 11; *see also* a copy of the Note attached hereto as **Exhibit 1**[2]). The Note is secured by a Deed of Trust on real property (the "Property") that was previously owned by Yosemite Management, LLC ("Yosemite Management). (Adversary Complaint at ¶ 12 and Answer at ¶ 12; *see also* Deed of Trust at Exhibit 2 hereto, and Flood Aff., Exhibit B to Motion for Summary Judgment, at ¶ 3). The Deed of Trust was assigned to WBL on June 13, 2016. (Adversary Complaint at 16 and Answer at ¶ 16; *see also* Assignment at Exhibit 3 hereto, and Flood Aff., Exhibit B to Motion for Summary Judgment at ¶ 4).

3. Admitted. (Adversary Complaint at ¶ 12 and Answer at ¶ 12; *see also* Deed of Trust at Exhibit 2).

---

[1] To the extent that the Complaint can be read to challenge only the validity, extent or priority of the Promissory Note itself, Debtor will file an Amended Complaint to clarify that any challenge to the Note itself is collateral to the relief sought by the Debtor, which is a determination of the validity, extent and priority of the lien created by the DOT (which incorporates the usurious interest rate set forth in the Note).

[2] In support of its Motion for Summary Judgment, Defendant attaches two Exhibits, A and B. Exhibit A is a Special Warranty Deed dated December 6, 2017 between Yosemite Management, LLC and Rent-Rite Super Kegs West, Ltd. Exhibit B is titled "Affidavit in Support of Motion for Relief from Stay," which Plaintiff assumes is meant to be titled "Affidavit in Support of Motion for Summary Judgment." The Affidavit, executed by Shannon Flood (the "Flood Aff."), refers to three Exhibits, A, B and C, which Exhibits were not attached to the Affidavit or filed with the Court. Exhibit A is identified as a copy of the Promissory Note between CMS Facilities and Bank of Lake Mills. Exhibit B is identified as the Deed of Trust executed by Yosemite Management, LLC to the Bank of Lake Mills. Exhibit C is identified as the Assignment of Deed of Trust. For purposes of clarity, the Promissory Note is attached hereto as Exhibit 1, the Deed of Trust executed by Yosemite Management is attached hereto as **Exhibit 2**, and the Assignment of Deed of Trust dated June 13, 2016 is attached hereto as **Exhibit 3**.

4. Rent-Rite is the current owner of the Property. On December 6, 2017, Yosemite Management executed a Special Warranty Deed to Rent-Rite, a copy of which is attached to the Motion for Summary Judgment as Exhibit A. In conjunction with the Special Warranty Deed, the following documents were also executed on December 6, 2017: A Purchase and Sale Agreement ("Purchase Agreement"), Promissory Note (the "Rent-Rite Note"), and Deed of Trust (the "Rent-Rite Deed of Trust"). (*See* **Exhibits 3**, **4** and **5** attached hereto). Pursuant to the Purchase Agreement, the purchase price for the property shall be paid, *inter alia,* as

> Credit for balance owed on Bank of Mills Deed of Trust. Purchaser shall take title to the Property subject to the lien of the of the deed of trust encumbering the Property and securing a note made by CMS Facilities Maintenance Inc. payable to Bank of Lake Mills in the original principal amount of $550,000.00 recorded on April 26, 2016 at Reception No. 6042826 of the real property records of Arapahoe County, Colorado (the "Bank of Lake Mills Deed of Trust"). Purchaser is not assuming any personal liability on the obligations secured by the Bank of Lake Mills Deed of Trust but shall receive a credit against the Purchase Price of the amount outstanding on those obligations as of the date of the Closing.

(Exhibit 4 at ¶ 3(A)).

5. Admitted.

6. Admitted. (Exhibit A to Motion for Summary Judgment, and Exhibits 4 through 6 hereto).

7. Rent-Rite admits that the WBL Note provides in paragraph 15(c) that the Note would be governed by the laws of the State of Wisconsin. (Exhibit 2). However, Rent-Rite is not a party to the Note, nor is it a guarantor on the Note. (*Id.*).

8. Admitted. (Adversary Complaint at ¶ 14 and Answer at ¶ 14; *see also* Exhibit 2 hereto at ¶¶ 1-3).

9. Rent-Rite admits that CMS defaulted on the WBL Note and that WBL is claiming that the amount due and owing to it is $658,652.55, but denies that WBL is entitled to that amount from either the Property or the Debtor.

### III. ADDITIONAL FACTS

1. On February 26, 2018, WBL filed a Proof of Claim in the amount of $658,652.95, claim 27-1. (Adversary Complaint at ¶ 10 and Answer at ¶ 10; *see also* Proof of Claim attached hereto as **Exhibit 7**). The basis for WBL's Proof of Claim is the Deed of Trust initially executed by Yosemite Management. (Proof of Claim at p. 2).

2. The Proof of Claim identifies the annual interest rate to be applied as 120.86%. (Adversary Complaint at ¶ 21 and Answer at ¶ 21; *see also* Exhibit 7 at p. 2).

3. Paragraph 16 of the Deed of Trust states:

> This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.

(Exhibit 2 at ¶ 16; *see also* Adversary Complaint at ¶ 13 and Answer at ¶ 13). "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." (Exhibit 2 at ¶ (I), p. 2).

4. The terms of the Note are incorporated by reference into the Deed of Trust. (Exhibit 2 at ¶ (E)).[3]

---

[3] *See also* ¶ 9, which provides that "[a]ny amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument…[and] [t]hese amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment."

4

## IV. ARGUMENT

### A. The Deed of Trust Is Governed by Colorado Law and Application of 120.86% Interest Rate Constitutes Usury

WBL seeks to recover $658,652.55, including interest. The interest rate identified by WBL in its Proof of Claim is 120.86%, the interest rate set forth in the Note. The basis for its Proof of Claim is the Deed of Trust executed by Yosemite Management. The Deed of Trust specifically provides for application of Colorado law. On December 6, 2017, Rent-Rite purchased the Property from Yosemite Management, which purchase is subject to the Rent-Rite Deed of Trust. (*See* Ex 6 at ¶ 3(A)). Rent-Rite is not a party to the Note, although WBL seeks to enforce the terms of the Note against Rent-Rite and the Property. The interest rate set forth in the Proof of Claim violates Colorado law, which prohibits interest rates on loans greater than 45%. *See* C.R.S. § 5-12-103(1). Thus, application of the 120.86% rate to the liability under the Deed of Trust constitutes usury in violation of Colorado law.

In addition, it would be inequitable to allow for an excessive interest rate to be imposed, which interest rate serves as a penalty as against other creditors, and particularly unsecured creditors. *See, e.g., In re Hollstrom*, 133 B.R. 535, 539 (Bankr. D. Colo. 1991) (Court determined that oversecured creditor was not entitled to a 36% default rate of interest as imposition of the default rate could conflict with equitable principles applicable in a bankruptcy proceeding.)[4]

---

[4] Although the issue in the *Hollstrom* decision was whether the secured creditor is entitled to a thirty-six percent (36%) default rate of interest on its oversecured claim pursuant 11 U.S.C. § 506(b), the reasoning behind the decision is equally applicable to the within case. The Court in *Hollstrom* stated that usually "the court should apply the contract rate, but it has the power to apply a different rate depending upon equitable considerations," as well as considerations where the contracted interest rate violates state law. *Id.*, at 539, citing *In re Schaumburg Hotel Owner Ltd. Partnership*, 97 B.R. 943, 951 (Bankr.N.D.Ill.1989) ("A court should allow contractually bargained for default interest rate [sic] without examining the reasonableness of these rates provided they fall within the range of acceptable rates ... the default rate here was not shown to fall outside the range of default rates applied commercially, nor does it shock the conscience of the Court.") (emphasis added). *In re Presque Isle Apartments, L.P.*, 109 B.R. 687, 689 (Bankr.W.D.Pa.1990) ("It is not illegal to provide for a higher rate of interest after maturity, but if such rate is unconscionably high, it will be unenforceable because it amounts to a penalty. [Citations omitted.] To allow the Bank interest at the criminal usury rate would clearly be unconscionable and unenforceable as a penalty.") (The criminal usury rate in New Jersey, the law at issue, was 50% for a corporation and 30% for an individual).

5

Under these circumstances, enforcing the interest provision of the Note further does not comport with the Code's objective of achieving an equitable distribution of assets among all the estate's creditors.

B. **Assuming *Arguendo* that the Note's Choice of Law Provision (Rather than the Deed of Trust Provision) Applies, Application of Wisconsin Law Would be Contrary to Public Policy of Colorado**

Assuming *arguendo* that the choice of law provision set forth in the Note (rather than the Deed of Trust) should apply to determine whether the interest rate is usurious for purposes of the Proof of Claim, application of Wisconsin law would be contrary to the strong public policy of Colorado. In addition, Wisconsin has no significant relationship to the transaction.

In determining a choice of law issue, federal court must apply the choice of law rules of the jurisdiction in which it is situated. *Dang v. UNUM Life Ins. Co. of America,* 175 F.3d 1186, 1190 (10th Cir.1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941))*.* Thus, Colorado utilizes the Restatement (Second) of Conflict of Laws to resolve choice of law issues. *Farmington Cas. Co. v. United Educators Ins. Risk Retention Group, Inc.*, 117 F. Supp. 2d 1022, 1025 (D. Colo. 1999). The Restatement (Second) Conflict of Laws ("the Restatement (Second)") § 187 provides that the law of the state chosen by the parties to govern their contractual rights will be applied unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

6

*Kipling v. State Farm Mut. Auto. Ins. Co.*, 159 F. Supp. 3d 1254, 1268–69 (D. Colo. 2016). The application of § 187 necessarily requires the court to consider what state has the most significant relationship to the contractual transaction and the parties. *Id.* at 1266.[5]

### 1. **Application of Wisconsin's law would violate Colorado's public policy against usurious loans**

Application of Wisconsin's usury law is, under the facts of this case, contrary to a fundamental policy of Colorado. "The original conception of the public policy exception was that some causes of action were so repugnant to the values of the forum state that the state courts would feel compelled to close their doors to them." *Tucker v. R.A. Hanson Co., Inc.*, 956 F.2d 215, 218 (10th Cir. 1992) citing *Loucks v. Standard Oil Co. of New York*, 224 N.Y. 99, 120 N.E. 198, 202 (1918). "State proscriptions against *usury*, prostitution, and gambling were examples of the kind of public policies that for a state court to countenance such activities would in Justice Cardozo's words, 'violate some fundamental principle of justice, some prevalent conception of morals, some deep-seated tradition of the commonweal.'" *Id.* (emphasis supplied).

Colorado law prohibits interest rates on loans greater than forty-five (45%) per annum. *See* C.R.S. § 5-12-103(1). Section 138.05(1)(a) of the Wisconsin statute states: "Except as authorized by other statutes, no person shall, directly or indirectly, contract for, take or receive in money, goods or things in action, or in any other way, any greater sum or any greater value, for the loan or forbearance of money, goods or things in action, than…[a]t the rate of $12 upon $100 for one year computed upon the declining principal balance of the loan or forbearance." However, § 138.05(5) states that the "section shall not apply to loans to corporations or limited liability companies."

---

[5] Contacts a Court takes into consideration when analyzing which state has the most significant relationship include, (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.*, citing sections 6 and 188, Restatement (Second) Conflict of Laws.

Therefore, in Wisconsin, there is no limit on the interest rate chargeable to a corporation or limited liability company. The allowable interest rate to be charged against a corporation or limited liability company in Colorado is 45%. The unlimited interest rate allowed under the Wisconsin statute is at odds with the Colorado statute. Therefore, the 120.86% interest rate set forth in the Promissory Note, and which WBL seeks to enforce against the Property under the Deed of Trust, violates Colorado's public policy as the loan contains an interest rate in excess of the 45% allowed under § 5-12-103.

2. **Colorado has the most significant relationship**

In the present case, Colorado has the most significant relationship to the transaction and the greatest interest. In its Motion for Summary Judgment, WBL asserts that because the Note was made in Wisconsin, Wisconsin law should apply. (Motion at p. 4). Although Plaintiff does not dispute that the Note was made in Wisconsin, that is the only connection the state has to the transaction. Indeed, the sole basis for applying Wisconsin law was because the original lender on the Note, Bank of Lake Mills, is located in Wisconsin. *See* Section 15 of the Note ("Lender is an FDIC insured, Wisconsin state chartered bank and this Loan Agreement is accepted by Lender in Wisconsin."). The current holder of the Note is WBL, which is located in New York. (Motion for Summary Judgment at p. 1; *see also* Complaint at ¶ 2 and Answer and ¶ 2). The Borrower on the Note, CMS, is a Colorado corporation. (Exhibit 1 at p. 1). Rent-Rite, the owner of the Property, is a Colorado corporation. (*See,* generally, Exhibits 4 through 6; *see also* Rent-Rite's Chapter 11 Petition). The previous owner of the Property, Yosemite Management, is a Colorado limited liability company. (Exhibit 1 at p. 1). The Property is located in Colorado. (Exhibits 1 and 2). Any legal action to be undertaken relative to the Property will occur in Colorado, in accordance with Colorado law. The Deed of Trust, on which WBL relies for its Proof of Claim, states that it

shall be governed by federal law and the law of the jurisdiction in which the Property is located. Therefore, Colorado has a much stronger interest than Wisconsin in seeing that its laws apply to contracts governing agreements relating to real property located in Colorado.

**C.    Indispensable Party**

WBL argues, in conclusory fashion, that because CMS was the signatory on the WBL Note, it is "by necessity an indispensable party to the validity of this WBL Note." (Motion at p. 4). As an initial matter, WBL fails to set forth any legal basis in support of its assertion that CMS is an indispensable party. As an aside, WBL also asserts that Yosemite deeded the property to "Rite-Rent Super Kegs West, Ltd., not to the debtor." (*Id.*) Also in its Motion, WBL asserts that the "property is currently being claimed as owned by the Debtor Rent-Rite Super Kegs West, LTD; however the deed from Yosemite Management, LLC actually conveys the property to "Rite-Rent Super Kegs West, Ltd." (*Id.* At p 2, ¶ 4). It appears WBL believes that there are two different parties involved: Rent-Rite and Rite-Rent. However, the sale documents demonstrate that the Debtor, Rent-Rite is the owner of the Property and the identification of "Rite-Rent" in the Warranty Deed is nothing more than a spelling error. (*See, e.g.,* Purchase Agreement, Rent-Rite Deed of Trust, and Rent-Rite Note, Exhibits 4 through 6 hereto, identifying the party as "Rent-Rite Super Kegs West, Ltd."). Regardless, WBL has made no legal or factual showing that CMS, Thomas Wright or Yosemite Management are indispensable parties.[6]

---

[6] WBL further asserts that the transaction "occurred five (5) days prior to the filing of the Chapter 11 proceeding by Rent-Rite Super Kegs West, Ltd." (*Id.*) It is unclear as to how this relates to whether certain parties should be considered indispensable parties.

## V. CONCLUSION

WHEREFORE, Plaintiff Rent-Rite respectfully requests that the Court enter an Order denying Defendant's Motion for Summary Judgment. Plaintiff further requests the Court determine that (1) Colorado law as set forth in the Deed of Trust applies; (2) that application of the 120.86% interest rate set forth in the Promissory Note, as applied to the Deed of Trust, constitutes usury; and (3) for such other and further relief as the Court deems just and proper.

DATED this 20th day of August 2018.

Respectfully submitted,

*/s/ Jennifer E. Schlatter*
Patrick D. Vellone, #15284
Jennifer E. Schlatter, #30626
1600 Stout Street, Suite 1100
Denver, Colorado 80202
303-534-4499
pvellone@allen-vellone.com
mlarson@allen-vellone.com

ATTORNEYS FOR RENT-RITE SUPER KEGS WEST, LTD.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this the 20th day of August 2018, I caused the foregoing **PLAINTIFF RENT-RITE SUPER KEGS WEST LTD'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**, to be served by CM/ECF pursuant to L.B.R. 5005-4(a), to the following:

Phillip J. Jones, Esq.
744 Horizon Court, Suite 115
Grand Junction, CO  81506


*/s/ Marcie J. Morton*
Allen Vellone Wolf Helfrich & Factor P.C.