# UNITED STATES BANKRUPTCY COURT
### District of Colorado

| | | |
|---|---|---|
| In re: | RENT-RITE SUPER KEGS WEST LTD | Case No.<br>17-21236 TBM |
| | Debtor. | |
| | | Chapter<br>11 |
| | RENT-RITE SUPER KEGS WEST LTD, | |
| | Plaintiff | Adv. Proc. No.<br>18-1099-TBM |
| | WORLD BUSINESS LENDERS, LLC, | |
| | Defendant | |

## PLAINTIFF RENT-RITE SUPER KEGS WEST, LTD'S FINAL WRITTEN ARGUMENTS

Plaintiff Rent-Rite Super Kegs West, Ltd.'s ("Plaintiff" or "Rent-Rite"), by and through undersigned counsel, hereby submits the following Final Written Arguments.

## I.        INTRODUCTION

This Adversary Proceeding seeks disallowance and subordination of a Proof of Claim filed by Defendant World Business Lenders, LLC ("Defendant" or "WBL"), wherein WBL alleges that it is a secured creditor with a $658.652.95 lien pursuant to a Deed of Trust bearing an interest rate in excess of Colorado usury laws. The Deed of Trust that forms the basis of WBL's claim secures a promissory note that contains a usurious interest rate of 120.86%, well in excess of the 45% allowed under Colorado law. The Deed of Trust contains a choice of law provision mandating application of the law of the jurisdiction in which the real property is located, which is Colorado. WBL asserts that the choice of law provision set forth in the promissory note controls, which law would be Wisconsin. The Deed of Trust, however, provides that it is governed "by the law of the

1

jurisdiction in which the Property is located." Rent-Rite, as the owner of the Property, is directly impacted by WBL's attempt to enforce a usurious interest rate through a lien upon the Property, the Debtor's most valuable asset.

## II.   ARGUMENT

### A.   Facts

The Promissory Note and Security Agreement (the "Note") at issue was executed on April 19, 2016.  (Amended Stipulated Facts (the "Facts") at ¶ 2 [Doc. # 30-1]; and Exhibit 1 [Doc. # 30-2])[1].  The Note is in the principal amount of $555,000.  (*Id.*).  The Note is between CMS Facilities Maintenance, Inc. ("CMS") as Borrower and the Bank of Lake Mills as Lender.  (*Id.*)  Pursuant to the terms of the Note, "[t]he unpaid Principal shall bear interest at the rate of **0.3311212328767%** per day until paid in full." (Exhibit 1) (emphasis original).  The Note further provides that "Borrower shall repay the Principal and interest commencing on **04/25/2016** and on each Business Day thereafter until **04/24/2017** with each daily payment equaling **$3,775.72**, followed by a final payment of **$3,771.34** on **04/24/2017**, when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full."  (*Id.*) (emphasis original).

The Note is secured by a Deed of Trust on real property previously owned by Yosemite Management, LLC and now owned by Rent-Rite (the "Property").  (Facts at ¶ 3; and Exhibit 2).  Yosemite Management did not execute the Promissory Note.  Paragraph 16 of the Deed of Trust states:

> This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is

---

[1] On September 5, 2018, the parties submitted their Amended Stipulated Facts (Docket No. 30-1) and Amended Stipulated Exhibits (Docket No. 30-2).  The Facts and Exhibit numbers referenced herein are based upon the  numbers identified in Amended Stipulated Facts and Amended Stipulated Exhibits.  As copies of the exhibits were and hand-delivered to the Court's chambers, Plaintiff will not over-burden the Court with attaching copies of the same to this filing.

> located.  All rights and obligations contained in this Security
> Instrument are subject to any requirements and limitations of
> Applicable Law.

(Exhibit 2 at ¶ 16).  "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."  (*Id.* at ¶ (I), p. 2).  The terms of the Note, including its usurious interest rate, are incorporated by reference into the Deed of Trust.  (Exhibit 2 at ¶ (E)).[2]

On June 13, 2016, the Note and Deed of Trust were assigned to WBL.  (Facts at ¶ 5; and Exhibit 3).  WBL is a New York limited liability company with its principal place of business at 101 Hudson Street, 33rd Floor, Jersey City, NJ 07302.  (Facts at ¶ 1).

Rent-Rite is the current owner of the Property.  On December 6, 2017, Yosemite Management executed a Special Warranty Deed conveying the Property to Rent-Rite. (Facts at ¶ 6; and Exhibit 7).  In conjunction with the Special Warranty Deed, the following documents were also executed on December 6, 2017:  A Purchase and Sale Agreement ("Purchase Agreement"), Promissory Note (the "Rent-Rite Note"), and Deed of Trust (the "Rent-Rite Deed of Trust"). (Facts at ¶¶ 7-8; and Exhibits 4-6).  Pursuant to the Purchase Agreement, the purchase price for the property shall be paid, *inter alia,* as

> Credit for balance owed on Bank of Mills Deed of Trust.  Purchaser
> shall take title to the Property subject to the lien of the of the deed
> of trust encumbering the Property and securing a note made by CMS
> Facilities Maintenance Inc.  payable to Bank of Lake Mills in the
> original principal amount of $550,000.00 recorded on April 26,
> 2016 at Reception No. 6042826 of the real property records of
> Arapahoe County, Colorado (the "Bank of Lake Mills Deed of
> Trust").  Purchaser is not assuming any personal liability on the

---

[2] *See also* Exhibit 2 at ¶ 9, which provides that "[a]ny amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument…[and] [t]hese amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment."

> obligations secured by the Bank of Lake Mills Deed of Trust but shall receive a credit against the Purchase Price of the amount outstanding on those obligations as of the date of the Closing.

(Exhibit 4).

In or around February 2017, CMS defaulted on the Note. (Facts at ¶ 10; and Exhibit H). According to WBL's "Loan Terms and Balances" document (Exhibit H), as of May 23, 2018, the principal balance on the $550,000 Note wass $283,811.01. The principal amount paid down by CMC, as reported by WBL, is $266,188.99. (Exhibit H at p. 1) WBL also reflects that CMC paid $357,244.61 in interest. *Id.* The total amount paid by CMC on the Note is $623,433.60. *Id.*

On February 26, 2018, WBL filed a Proof of Claim in the amount of $658,652.95, claim 27-1. (Facts at ¶ 11; and Exhibit 8). The basis for WBL's Proof of Claim is the Deed of Trust, initially executed by Yosemite Management. (Exhibit 8). WBL did not include a statement with its Proof of Claim identifying the manner in which it calculated the amount it claims is owed, however, as evidenced by WBL's statement of Loan Terms and Balances and its Proof of Claim's secured amount alleged due, the entire amount appears to consist of usurious interest charges.

### III.   RENT-RITE CLAIMS

In its Adversary Complaint, Rent-Rite has asserted the following claims for relief: (1) Declaratory Judgment; (2) Objection to and Disallowance of WBL's Proof of Claim pursuant to 11 U.S.C. § 502; and (3) Equitable Subordination of Claim pursuant to 11 U.S.C. § 510.

### A.   Claim for Objection to and Disallowance of WBL's Proof of Claim

#### 1.   Section 502 Standards

Section 502(b)(1) provides for disallowance of any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or *applicable law* for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1) (emphasis added). This

statutory disallowance is complemented by § 558 which states: "The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of fraud, usury, and other personal defenses." 11 U.S.C. § 558. As set forth in *In re Richter*, 478 B.R. 30, 40–41 (Bankr. D. Colo. 2012):

> When the presumption of validity is present and a party in interest files an objection to the allowance of a claim, the well-established burdens of proof are as follows:
>
> The objecting party has the burden of going forward with evidence supporting the objection. Such evidence must be of probative force equal to that of the allegations contained in the proof of claim. However, an objection raising only legal issues is sufficient. Once the objecting party has reached this threshold, the creditor [claimant] has the ultimate burden of persuasion as to the validity and amount of the claim. If the party seeking disallowance of a claim based on a writing raises a substantive objection under § 502(b) and presents sufficient evidence to refute at least one of the elements essential to the claim's sufficiency, the burden of proof shifts back to the claimant to prove claimant has a valid claim against the debtor.

(internal citations omitted).

Rent-Rite objects to the Proof of Claim on the ground that the Deed of Trust, which incorporates the terms of the Note, contains a usurious rate of interest under applicable Colorado law, and therefore should be disallowed. Rent-Rite further asserts that the applicable law governing the dispute is Colorado law, "the law of the jurisdiction in which the Property is located." WBL asserts that the choice of law set forth in the Note, which is Wisconsin, is the law to be applied. The ultimate burden of persuasion befalls WBL.

## 2.   The Deed of Trust Is Governed by Colorado Law and Application of 120.86% Interest Rate Constitutes Usury

WBL seeks to recover $658,652.55, including continuing interest, against the Property. The interest rate identified by WBL in its Proof of Claim is 120.86%, the interest rate set forth in the Note. The basis for its secured Proof of Claim is the Deed of Trust executed by Yosemite

5

Management.  The Deed of Trust specifically provides for application of Colorado law, as "the law of the jurisdiction in which the Property is located."  On December 6, 2017, Rent-Rite purchased the Property from Yosemite Management, which purchase is subject to the WBL Deed of Trust.  (*See* Ex 6 at ¶ 3(A)).  Rent-Rite is not a party to the Note, although WBL seeks to enforce the terms of the Note against Rent-Rite and the Property. The interest rate set forth in the Proof of Claim violates Colorado law, which prohibits interest rates on loans greater than 45%. *See* C.R.S. § 5-12-103(1).  Thus, application of the 120.86% rate to the liability under the Deed of Trust constitutes usury in violation of Colorado law.

3.     **In Considering Whether the Note's Choice of Law Provision (Rather than the Deed of Trust Provision) Applies, The Court Should Find That Application of Wisconsin Law Would be Contrary to Public Policy of Colorado**

In analyzing whether the choice of law provision set forth in the Note (rather than the Deed of Trust) should apply to determine whether the interest rate is usurious for purposes of the Proof of Claim, the Court should consider whether application of Wisconsin law would be contrary to the strong public policy of Colorado. In addition, the Court should consider the fact that Wisconsin has no significant relationship to the transaction.

In determining a choice of law issue, a federal court must apply the choice of law rules of the jurisdiction in which it is situated. *Dang v. UNUM Life Ins. Co. of America,* 175 F.3d 1186, 1190 (10th Cir.1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Colorado utilizes the Restatement (Second) of Conflict of Laws to resolve choice of law issues. *Farmington Cas. Co. v. United Educators Ins. Risk Retention Group, Inc.*, 117 F. Supp. 2d 1022, 1025 (D. Colo. 1999). The Restatement (Second) Conflict of Laws ("the Restatement (Second)") § 187 provides that the law of the state chosen by the parties to govern their contractual rights will be applied unless either:

6

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Kipling v. State Farm Mut. Auto. Ins. Co.*, 159 F. Supp. 3d 1254, 1268–69 (D. Colo. 2016).  The application of § 187 necessarily requires the Court to consider what state has the most significant relationship to the contractual transaction and the parties.  *Id.* at 1266.[3]

### 4. Application of Wisconsin's law would violate Colorado's public policy against usurious loans

Application of Wisconsin's usury law is contrary to a fundamental policy of Colorado. "The Colorado public policy pronouncements against retention of usurious interest have been strong." *Dennis v. Bradbury*, 236 F. Supp. 683, 692 (D. Colo. 1964), *aff'd,* 368 F.2d 905 (10th Cir. 1966). "The original conception of the public policy exception was that some causes of action were so repugnant to the values of the forum state that the state courts would feel compelled to close their doors to them." *Tucker v. R.A. Hanson Co., Inc*., 956 F.2d 215, 218 (10th Cir. 1992) citing *Loucks v. Standard Oil Co. of New York*, 224 N.Y. 99, 120 N.E. 198, 202 (1918). "State proscriptions against *usury*, prostitution, and gambling were examples of the kind of public policies that for a state court to countenance such activities would in Justice Cardozo's words, 'violate some fundamental principle of justice, some prevalent conception of morals, some deep-seated tradition of the commonweal.'" *Id.* (emphasis supplied).

---

[3] Contacts a Court takes into consideration when analyzing which state has the most significant relationship include, (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.*, citing sections 6 and 188, Restatement (Second) Conflict of Laws.

Colorado law prohibits interest rates on commercial loans greater than forty-five (45%) per annum. *See* C.R.S. § 5-12-103(1). Section 138.05(1)(a) of the Wisconsin statute states: "Except as authorized by other statutes, no person shall, directly or indirectly, contract for, take or receive in money, goods or things in action, or in any other way, any greater sum or any greater value, for the loan or forbearance of money, goods or things in action, than…[a]t the rate of $12 upon $100 for one year computed upon the declining principal balance of the loan or forbearance." However, § 138.05(5) states that the "section shall not apply to loans to corporations or limited liability companies." Therefore, in Wisconsin, there is no limit on the interest rate chargeable to a corporation or limited liability company. The allowable interest rate to be charged against a corporation or limited liability company in Colorado is 45%. The unlimited interest rate allowed under the Wisconsin statute is at odds with the strong public policy embodied by the Colorado usury statute. Therefore, the 120.86% interest rate set forth in the Promissory Note, and which WBL seeks to enforce against the Property under the Deed of Trust, violates Colorado's public policy as the Deed of Trust incorporates an interest rate in excess of the 45% allowed under § 5-12-103.

## 5.    Colorado has the most significant relationship

In the present case, Colorado has the most significant relationship to the transaction and the greatest interest in the application of its laws to the Property. It is anticipated that WBL will assert that because the Note was made in Wisconsin, Wisconsin law should apply. Although Plaintiff does not dispute that the Note was made in Wisconsin, that is the only connection the state has to the transaction. Indeed, the sole basis for applying Wisconsin law was because the original lender on the Note, Bank of Lake Mills, is located in Wisconsin. *See* Section 15 of the Note ("Lender is an FDIC insured, Wisconsin state chartered bank and this Loan Agreement is accepted by Lender in Wisconsin."). The current holder of the Note is WBL, which is located in

New York. (Facts at ¶ 1). The Borrower on the Note, CMS, is a Colorado corporation. (Exhibit 1 at p. 1). Rent-Rite, the owner of the Property, is a Colorado corporation. (*See,* generally, Exhibits 4 through 7; *see also* Rent-Rite's Chapter 11 Petition). The previous owner of the Property, Yosemite Management, is a Colorado limited liability company. (Exhibit 1 at p. 1). The Property is located in Colorado. (Exhibits 1 and 2). Any legal action to be undertaken relative to the Property will occur in Colorado, in accordance with Colorado law.[4] The Deed of Trust, upon which WBL relies for its Proof of Claim, states that it shall be governed by federal law and "the law of the jurisdiction in which the Property is located." Therefore, Colorado has a much stronger interest than Wisconsin in seeing that its laws apply to contracts governing agreements relating to real property located in Colorado.

Pursuant to applicable state law, C.R.S. § 5-12-103, WBL's claim for interest charged on the WBL Note is usurious in excess of the lawful amount that can be charged. Thus, WBL's secured Proof of Claim should be disallowed pursuant to 11 U.S.C. § 502(b)(1).

**B.** **Equitable Subordination of Claim Pursuant to 11 U.S.C. § 510**

**1.** **Section 510 Standards**

The Bankruptcy Code, 11 U.S.C. § 510(c), permits "equitable subordination" of all or a portion of a creditor's claims "for purposes of distribution." A party seeking equitable subordination under § 510(c) must demonstrate: (1) The claimant has engaged in inequitable conduct; (2) the conduct has injured creditors or given unfair advantage to the claimant; and, (3) subordination of the claim is not inconsistent with the Bankruptcy Code.

---

[4] Indeed, on March 28, 2017, WBL filed a Complaint against CMC and the Guarantors on the Note seeking foreclosure of the Deed of Trust on the Property. The action was filed in Arapahoe County District Court, Case No. 2017CV30714. The litigation was stayed upon Debtor's filing of the Petition. *See* Case No. 17-21236 TBM (the "Bankruptcy Case") Rent-Rite's Statement of Financial Affairs, Doc. #24 at p. 4.

The Tenth Circuit requires three conditions for a court to exercise its equitable subordination power: "(1) 'inequitable conduct' on the part of the claimant sought to be subordinated; (2) injury to the other creditors of the bankrupt or unfair advantage for the claimant resulting from the claimant's conduct; and (3) consistency with the provisions of the Bankruptcy Code." *In re Alternate Fuels, In*c., 789 F.3d 1139, 1154–55 (10th Cir. 2015) (internal citation omitted). Courts recognize three categories of "inequitable conduct": "(1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; or (3) claimant's use of the debtor as a mere instrumentality or alter ego," *Id*. (internal citations omitted).

WBL has the ultimate burden to prove the validity of its claim. *United States v. Colorado Invesco, Inc.*, 902 F. Supp. 1339, 1344 (D. Colo. 1995). Once there is proof the claim itself is valid, it is Rent-Rite's burden to present material evidence of inequitable conduct. *Id.* If Rent-Rite makes a prima facie case for equitable subordination, the burden of going forward shifts to WBL *Id*.

Rent-Rite seeks equitable subordination of WBL's claims due to WBL's inequitable conduct in seeking to collect from the Property and have Rent-Rite pay a greater rate of interest than is allowed by Colorado law.

### 2. WBL has engaged in illegal conduct

The conditions under which WBL seeks to enforce the usurious terms of the Note to the Deed of Trust is imbued with bad faith and illegality. The Deed of Trust is governed by the laws of Colorado, where the Property is located. WBL is aware of the terms of the Deed of Trust, and is therefore presumed to know that application of an interest rate in violation of Colorado law is illegal. *See* C.R.S. § 5-12-103 and C.R.S. § 18-15-104(1); *see also, e.g., In re M & L Bus. Mach. Co., Inc.*, 155 B.R. 531, 537 (Bankr. D. Colo. 1993), aff'd, 164 B.R. 657 (D. Colo. 1994), ("In

general terms, this Court finds that neither (1) a promissory note providing for grossly usurious interest rates, *which is illegal under state law*, and to be paid by the issuance of a series of post-dated checks, (2) coupled with payment in such a form, could possibly come under the penumbra of "ordinary business terms" with relation to either "business," or commerce."), citing C.R.S. § 18-15-104(1) and C.R.S. § 5-12-103; *see also, e.g. Penny v. Giuffrida,* 897 F.2d 1543, 1547 (10th Cir.1990) ("citizens are presumed to know the law"). The Colorado statute condemns usury in that it prohibits excessive interest. *Massie v. Rubin*, 270 F.2d 60, 62–63 (10th Cir. 1959) (internal citations omitted) (Usury statutes are enacted to protect borrowers from the demands of unscrupulous lenders, and not to provide vehicles for unjust windfalls.)

### 3.   Other creditors in the Rent-Rite Bankruptcy will be harmed if WBL's claim is allowed

The second prong under the test for equitable subordination – that the conduct injured other creditors or gave an unfair advantage to WBL – has also been met. WBL seeks to enforce a Proof of Claim in the amount of $658,652.00 against the Property. At the time of the filing of Rent-Rite's Chapter 11 Petition on December 11, 2017, the most valuable asset listed by Rent-Rite is the Property. *See* the Bankruptcy Case at Doc. #1[5] At the time of the filing of the Petition, the Property was valued at $3,300,000.00. *See* Bankruptcy Case, Statement of Financial Affairs at Doc. #24, at p. 13. WBL's attempt to enforce a usurious rate of interest through the Deed of Trust both harms other creditors by taking away assets, and gives WBL an unfair advantage by allowing

---

[5] "A court may take judicial notice of its own files and records, as well as facts which are a matter of public record." *Schoenfeld v. Thompson*, 16-CV-02630-MSK-NYW, 2017 WL 8944003, at *3 (D. Colo. June 7, 2017), citing *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). "A court may also take judicial notice of other courts' files and records from the Electronic Court Filing system, as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Id.* (citations omitted) "And the court may take judicial notice of filings in related cases." *Id.* (citations omitted). *See also* Fed. R. Evid. 201(b) which allows this Court to take judicial notice of facts that are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction or (2) capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned.

it an unpaid, enhanced, secured claim.  Absent subordination of this claim, Rent-Rite's other creditors in the Bankruptcy may very well never have access to the estate's assets.  *See also Wolfe v. Ebert*, 37 B. R. 934, 937 (D.S.C. 1983) (Court held that "[a]llowance of the usurious claim for interest and attorney's fees would reduce the funds available for payment of other claims against the debtors, thereby favoring the claimant at the expense of the debtors' other creditors."); *In re Giorgio*, 62 B.R. 853 (Bankr. D.R.I. 1986) ("Lender's extraction of exorbitant interest charges of at least $40,000 on credit extended to Chapter 13 debtors of at most $44,000 satisfied 'moral turpitude' requirement so as to warrant equitable subordination of claim by co-executors of lender's estate, where lender controlled debtors' finances in a way that caused other creditors to suffer financially while lender profited from alleged loan sharking activities, which he attempted to disguise as a lawful promissory note..[and] it would be difficult to imagine a result more ludicrous than if the …claim were to be placed on a level equal to that of creditors whose claims are not tainted."). Thus, WBL's Proof of Claim unfairly dilutes the claims of creditors who will likely not recover even the entire principal amount of their debt.

   4.   **Equitable subordination of WBL's Claim is consistent with the provisions of the Bankruptcy Code.**

   The Bankruptcy court is a court of equity, possessing the inherent power to "prevent the consummation of a course of conduct by a claimant which would be inequitable by subordinating his claim to the ethically superior claims asserted by other creditors."  *In re Hoffinger Indus., Inc.*, 327 B.R. 389, 416 (Bankr. E.D. Ark. 2005); *see also In re Kortz*, 283 B.R. 706, 714 (Bankr. N.D. Ohio 2002) ("The inequity which will entitle a bankruptcy court to regulate the distribution to a creditor by subordination or other equitable means ... may arise out of any unfair act on the part of the creditor which affects the bankruptcy results to other creditors and so makes it inequitable that he should assert a parity with them in the distribution of the estate.") (internal citation omitted); *In*

12

*re Sunbeam Corp.*, 284 B.R. 355, 363 (Bankr. S.D.N.Y. 2002) ("A bankruptcy court's general equitable power to adjust equities among creditors in relation to the liquidation results is the source of the bankruptcy court's power to subordinate claims. The equitable goal is to prevent injustice or unfairness in the bankruptcy context. This is accomplished by permitting the court to subordinate an otherwise legally valid claim when the claimant has engaged in conduct that makes it unjust or unfair for the claimant to share pro rata with similarly situated creditors.") (internal citations omitted.).

WBL's conduct in connection with its loan to CMC, the terms of which it seeks to enforce against Rent-Rite through the Deed of Trust, was inequitable. Thus, subordination of WBL's claim would be consistent with the provisions of the Bankruptcy Code. It would be inequitable to allow for an excessive interest rate to be imposed, which interest rate serves as a penalty as against other creditors, and particularly unsecured creditors. *See, e.g., In re Hollstrom*, 133 B.R. 535, 539 (Bankr. D. Colo. 1991) (Court determined that over-secured creditor was not entitled to a 36% default rate of interest as imposition of the default rate could conflict with equitable principles applicable in a bankruptcy proceeding.)[6] Under these circumstances, enforcing the interest provision of the Note further does not comport with the Code's objective of achieving an equitable distribution of assets among all the estate's creditors.

---

[6] Although the issue in the *Hollstrom* decision was whether the secured creditor is entitled to a thirty-six percent (36%) default rate of interest on its over-secured claim pursuant 11 U.S.C. § 506(b), the reasoning behind the decision is equally applicable to the within case. The Court in *Hollstrom* stated that usually "the court should apply the contract rate, but it has the power to apply a different rate depending upon equitable considerations," as well as considerations where the contracted interest rate violates state law. *Id.*, at 539, citing *In re Schaumburg Hotel Owner Ltd. Partnership*, 97 B.R. 943, 951 (Bankr.N.D.Ill.1989) ("A court should allow contractually bargained for default interest rate [sic] without examining the reasonableness of these rates provided they fall within the range of acceptable rates ... the default rate here was not shown to fall outside the range of default rates applied commercially, nor does it shock the conscience of the Court.") (emphasis added). *In re Presque Isle Apartments, L.P.*, 109 B.R. 687, 689 (Bankr.W.D.Pa.1990) ("It is not illegal to provide for a higher rate of interest after maturity, but if such rate is unconscionably high, it will be unenforceable because it amounts to a penalty. [Citations omitted.] To allow the Bank interest at the criminal usury rate would clearly be unconscionable and unenforceable as a penalty." The criminal usury rate in New Jersey, the law at issue, was 50% for a corporation and 30% for an individual).

5.      __The extent necessary to offset the harm__

"In establishing the circumstances justifying equitable subordination, courts have been careful to recognize that the doctrine is remedial, not penal, and should be applied only to the extent necessary to offset the harm which ... creditors suffered as a result of the inequitable conduct." *In re Eufaula Indus. Auth.*, 266 B.R. 483, 488 (B.A.P. 10th Cir. 2001) (internal citations omitted).  In enacting the usury statute, the legislature determined that interest rates of up to 45% are reasonable and not usurious. *Dikeou v. Dikeou*, 928 P.2d 1286, 1288 (Colo. 1996), citing § 5–12–103(2), 2 C.R.S. (1992)[7].

The interest rate set forth in the Note is usurious on its face.  Specifically, the Note identifies the regular interest at  0.331121232876% *per day*.  Daily payments on the principal equaled $3,775.84. (Exhibit H).  Exhibit H further identifies the substantial daily interest to which WBL would seek to enforce against Rent-Rite.  By way of demonstration, if the Court were to rely upon its equitable powers to reduce the usurious 120% interest rate to that of 45%, the maximum rate allowable under Colorado law, using the daily payment schedule set forth in the Note, the total cumulative interest rate that would have been paid at 45% is $56,679.87.[8]  In fact, based upon the

---

[7] *See also In re Wood Family Interests, Ltd.*, 135 B.R. 407, 409 (Bankr. D. Colo. 1989) (Principal secured creditor filed objection to confirmation of plan, asserting that it was entitled to assess and collect the default rate of interest, to which Debtor contended was improper.  In analyzing the arguments, the Court held:  "The Debtor argues that the case of *Browne v. Steck,* 2 Colo. 70 (1873) should be controlling regarding the imposition of default rate of interest.  However, this case is inapplicable to the instant matter. In *Browne,* the Court correctly held that the interest rate charged on a promissory note should bear a reasonable relationship to the value of money.  However, *Browne* is factually distinguishable because the ***interest rate assessed against the Debtor in that case was 120% annually which is clearly unreasonable***. Here the imposition of interest at 24% does not even begin to equate with that rate.") (emphasis supplied).

[8] To arrive at the $56,679.87, undersigned counsel utilized the daily payment schedule set forth in the Note in the amount of $3,771.34.  The scheduled number of payments was calculated at 161 payments (or business days), with the exception of the following holidays: 5/30/16 – Memorial Day, 7/4/16 – Independence Day, 9/5/16 – Labor Day, 11/24/16 – Thanksgiving Day, 12/25/16 – Christmas Day.  Undersigned counsel utilized basic math to arrive at the cumulative interest amount, of which the Court may take judicial notice.  *See, e.g., Quintana v. City of Westminster*, 56 P.3d 1193, 1199 (Colo.App. 2002) ("Unquestioned laws of mathematics are judicially noticeable.")  In addition, conclusions reached by application of mathematical principles may be judicially noticed if such conclusions are irrefutable; *see also* Fed. R. Evid. 201(b);  and *Miller v. Fed. Land Bank of Spokane*, 587 F.2d 415, 422 (9th Cir. 1978) (In action brought by farmer-mortgagors against federal land bank mortgagee, asserting their right to proceeds

non-usurious rate of 45%, and the daily payments of $3,775.84, the loan payoff date would have been December 9, 2016.  Indeed, CMS was making the requisite payments and did not default on the Note until early 2017 (see Exhibit H).  Had CMS been charged a non-usurious rate of interest, it is likely that CMS would never have defaulted on the Note.  Based upon the above, Rent-Rite seeks subordination of WBL's entire Proof of Claim.

## C.   **Declaratory Judgment**

Based upon the admitted and/or judicially noticed facts and legal arguments set forth herein, Rent-Rite requests that the Court declare that the Note default interest rate of 120.86% is usurious and should not be applied to the Deed of Trust.  Rent-Rite further seeks a declaration as to the limited extent, priority, and validity of the Proof of Claim as set forth above.

## IV.   **WBL AFFIRMATIVE DEFENSES**

WBL asserts the following affirmative defenses:  (1) the parties to the Note have agreed the laws of the State of Wisconsin would govern the rate of interest on the note; (2) Rent-Rite lacks standing to challenge the interest rate on the Note; and (3) there has been a failure to join indispensable parties.  (Answer, Doc. #6 at p.3).

With respect to the first affirmative defense, as set forth above, the facts demonstrate that Rent-Rite is not a party to the Note. The Deed of Trust, upon which WBL relies for its Proof of Claim, and to which Rent-Rite is subject, is governed by the laws of Colorado, the state where the Property is located.  Therefore, Colorado law should govern the rate of interest. WBL has failed to offer any facts or evidence in support of its remaining affirmative defenses.  Thus, Rent-Rite is entitled to judgment as a matter of law in its favor on these defenses.

---

received from sale of a portion of the mortgaged lands to railroad under threat of condemnation, the district court could and should have taken judicial notice of the fact that, if one half of the $15,700 settlement were applied to the mortgage debt, the total amount of interest to be paid would have been reduced by $4,377.90 by reason of reduction of principal and shortening of the amortization period;  this was simply a matter of mathematics.")

15

## V.    CONCLUSION

WHEREFORE, Plaintiff Rent-Rite Super Kegs West, Ltd hereby prays for the following relief:

A.    An Order determining the validity, priority, and extent of the claims and/or liens of Defendant World Business Lenders, LLC against the Property of the Plaintiff;

B.    An Order disallowing the Proof of Claim filed by Defendant World Business Lenders, LLC;

C.    An Order equitably subordinating the claims and/or liens of Defendant World Business Lenders, LLC against the Property of the Plaintiff.  Or, in the alternative, an Order that any lien securing such a subordinated claim be transferred to the estate;

D.    An award of post-judgment interest at the maximum legal rate;

E.    An award of costs of suit and attorney's fees as provided by law; and

F.    Any further relief in favor of Plaintiff that this Court deems just and appropriate.

DATED this 24th day of September, 2018.

Respectfully submitted,

/s/ Patrick D. Vellone
Patrick D. Vellone, #15284
Jennifer E. Schlatter, #30626
1600 Stout Street, Suite 1100
Denver, Colorado 80202
Ph: 303-534-4499
pvellone@allen-vellone.com
mlarson@allen-vellone.com

ATTORNEYS FOR RENT-RITE SUPER KEGS WEST, LTD.

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on this the 24th day of August 2018, I caused the foregoing **PLAINTIFF RENT-RITE SUPER KEGS WEST LTD'S FINAL WRITTEN ARGUMENTS**, to be served by CM/ECF pursuant to L.B.R. 5005-4(a), to the following:

Phillip J. Jones, Esq.
744 Horizon Court, Suite 115
Grand Junction, CO  81506

*/s/ Marcie J. Morton*
Allen Vellone Wolf Helfrich & Factor P.C.

17