# UNITED STATES BANKRUPTCY COURT
## District of Colorado

| | |
|---|---|
| In re:    RENT-RITE SUPER KEGS WEST LTD | Case No. 17-21236 TBM |
| Debtor. | Chapter 11 |
| RENT-RITE SUPER KEGS WEST LTD, | |
| Plaintiff | Adv. Proc. No. 18-1099-TBM |
| WORLD BUSINESS LENDERS, LLC, | |
| Defendant | |

## PLAINTIFF RENT-RITE SUPER KEGS WEST, LTD'S SUPPLEMENTAL BRIEF PURSUANT TO COURT ORDER DATED MARCH 13, 2019 [DOC. #37]

Plaintiff Rent-Rite Super Kegs West, Ltd.'s ("Plaintiff" or "Rent-Rite"), by and through undersigned counsel, hereby submits the following Supplemental Brief Pursuant to Court Order Dated March 13, 2019 (the "Order")[Doc. #37].

## I.    INTRODUCTION

On March 13, 2019, this Court entered an Order requesting additional briefing on issues related to whether 12 U.S.C. § 1831d[1] governs the applicable rate of interest set forth in the Business Promissory Note and Security Agreement dated April 19, 2016 (the "Note").  The Court further ordered additional briefing regarding whether federal common law for choice of law principles applies to this Adversary Proceeding, and if not, what Colorado choice of law principles are applicable. As set forth more fully below, the FDIA is not applicable to this case because

---

[1] Section 27 of the Federal Deposit Insurance Act was amended in 1980 by the Depository Institutions Deregulation and Monetary Control Act of 1980, and  is codified as 12 U.S.C. § 1831d.  Courts interchangeably refer to the statute as either "FDIA" or "DIDA."  For consistency, Plaintiff will refer to the Act as "FDIA."

1

Defendant World Business Lenders, LLC ("WBL" or "Defendant") is not a state-chartered bank. Plaintiff has not asserted any claims against a state bank, nor has Plaintiff sought relief under the FDIA. In addition, WBL has not asserted any affirmative defenses relating to federal preemption. Therefore, the preemption provisions of FDIA are not relevant to the claims in this case.

With regard to whether federal common law for choice of law applies, as set forth in Plaintiff's Final Written Arguments [Doc. #36] and more fully below, federal courts have relied upon the Restatement (Second) of Conflict of the Laws, the applicable sections of which have been adopted in Colorado. Federal courts further look to state law when construing and interpreting contracts. Thus, under the applicable conflict of laws principles, the Court should apply Colorado law and determine that the amount of interest set forth in WBL's secured Proof of Claim is usurious.

## II.   ARGUMENT

### A.   Further Statement Regarding Facts

The claims in this case arise out of a Proof of Claim filed by WBL. There is no dispute that the Note was originally issued by the Bank of Lake Mills, and that the Bank is an FDIC insured, Wisconsin state-chartered bank. There is further no dispute that the Note is secured by a Deed of Trust on real property previously owned by Yosemite Management, LLC, and that the Deed of Trust was assigned to WBL on June 13, 2016. There is no dispute that WBL is not a national bank or an FDIC insured, state-chartered bank. In addition, there is no dispute that neither Yosemite Management, nor the current owner of the property, Debtor Rent-Rite, executed the Note. On February 26, 2018, WBL submitted its secured Proof of Claim. The basis for the Proof of Claim is the Deed of Trust (and not the Note to which the Debtor is not a signatory). (Trial Ex. 8 at p. 2).

In the Order, the Court incorrectly identifies  the focus of the Complaint as the Note.  The Complaint references that the Note is secured by a Deed of Trust, which Deed of Trust is secured by Property located in Colorado and owned by the Debtor.   Because the Deed of Trust incorporates by reference certain terms set forth in the Note,  including the usurious interest rate, Plaintiff seeks a determination that the interest rate set forth in the secured Proof of Claim attaching  the  Deed of Trust is usurious.   The relief sought by Plaintiff in the Complaint is as follows:  (1) an Order determining the  validity,  priority,  and extent of the claims and/or liens of Defendant World Business Lenders, LLC against the Property of the Plaintiff; (2) an Order disallowing the secured Proof of Claim filed by Defendant World Business Lenders, LLC; (3) an Order equitably subordinating the  claims and/or liens of Defendant World Business Lenders, LLC against the Property of the Plaintiff; (4) or, in the  alternative, an Order that any lien securing such a subordinated claim be transferred to the estate.  [Doc. #1 at p. 5].

To address the issues identified in the Order, the starting point is the express language of the Deed of Trust.  As set forth in Plaintiff's Final Written Arguments, Paragraph 16 of the Deed of Trust states:

> This Security Instrument shall be governed by federal law **and** the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and **limitations** of Applicable Law.

(Exhibit 2 at ¶ 16) (emphasis supplied).  "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."  (*Id.* at ¶ (I), p. 2).  The terms of the Note are incorporated by reference into the Deed of Trust.  (Exhibit 2 at ¶ (E)).  However, the Note also provides:

> Borrower expressly agrees that the interest rate set forth above in Section 2 is appropriate under the circumstances and shall be the applicable rate at which unpaid Principal (and Costs as defined below) shall bear interest under this Loan Agreement, notwithstanding any interest prescribed by statute from time to time; provided however (emphasis original), **if fulfillment of any provision of this Loan or any other instrument securing the Obligations is subject to a law that sets maximum interest rates or other charges,** (emphasis added) and the law is finally interpreted so that the interest or other fees collected or to be collect in connection with this Loan Agreement exceed the permitted limits **then (I) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit and (II) any sums already collected from Borrower that exceed the permitted limits will be refunded or credited to Borrower and the obligations created by this Loan Agreement shall be fulfilled to the limit of such validity as is permitted by law**.[2]

(Trial Ex. 1 at ¶15(h)) (emphasis supplied).  The Deed of Trust secures the Note obligation. The secured Proof of Claim, which is the subject matter of the Adversary Complaint, is based upon the Deed of Trust. It is clear from both the Promissory Note and the Deed of Trust, that Colorado law (the law where the Property is located),  is the law the Court should apply to determine whether the interest rate set forth in the secured Proof of Claim complies with Colorado law.

**B.**   **12 U.S.C. § 1831d Is Inapplicable and There is No Preemption**

**1.**   **The Facts of the Cases Relied Upon in the Court's Order are Distinguishable**

The Court has requested additional briefing regarding 12 U.S.C. § 1831d.  Specifically, the Court asks:  "Since Bank of Lake Mills is a [State Chartered FDIC insured Institution organized and existing under the laws of the State of Wisconsin,' does federal law, particularly 12 U.S.C. §

---

[2] A usury savings clause does not necessarily preclude, as a matter of law, a finding of usury, nor can a usury savings clause, by itself, absolutely insulate a lender from a finding of usury, but is just one factor to be considered.  *Jersey Palm-Gross, Inc. v. Paper*, 658 So. 2d 531, 535 (Fla. 1995).  A usury savings clause will not save a usurious transaction when a note is usurious on its face, that is, when the savings clause is directly contrary to the explicit terms of the contract, or when there is no evidence of the lender attempting to effectuate the savings clause.  *In re Perry,* 425 B.R. 323 (Bankr. S.D. Tex. 2010).   For example, New York courts have held that such provisions may be relevant to whether the lender had usurious intent, but do not automatically protect a transaction from a usury attack.  *Simsbury Fund, Inc. v. New St. Louis Associates*, 204 A.D.2d 182, 611 N.Y.S.2d 557 (1st Dep't 1994).

4

1831d, govern the applicable interest rate?" (Order at ¶ 1). The Court further asks that if 12 U.S.C. § 1831d governs, "are some or all of the Plaintiff's claims asserted in the Complaint preempted by federal law?" (*Id.* at ¶ 2). The Court cites to the following cases: *Marquette Nat'l Bank of Minneapolis v. First Omaha Serv., Corp,* 99 S. Ct. 540 (1978) (construing 12 U.S.C. § 85, also known as the "National Banking Act"); *Stoorman v. Greenwod Trust Co.*, 908 P.2d 133 (Colo. 1995) (construing FDIA and determining that a Delaware state-charted bank could legally charge interest in excess of Colorado usury rate) and *Beneficial Nat'l Bank v. Anderson*, 123 S. Ct. 2059 (2003) (construing the National Banking Act and applying complete preemption.). (*Id.* at ¶¶ 1-2).

The facts in the cases cited by the Court are inapposite to the present case. In the above-cited cases, claims were brought directly against banking institutions. In *Marquette*, Marquette National Bank of Minneapolis (Marquette), itself a national banking association enrolled in the BankAmericard plan, brought suit in the District Court of Hennepin County, Minn., to enjoin Omaha Bank and Omaha Service Corp. from soliciting in Minnesota for Omaha Bank's BankAmericard program until such time as that program complied with Minnesota law. Marquette named as defendants Omaha Bank, Omaha Service Corp., and the Credit Bureau of St. Paul, Inc. Omaha Service Corp. participated in Omaha Bank's BankAmericard program by entering into agreements with banks and merchants that were necessary to the operation of the BankAmericard scheme. *Marquette,* 439 U.S. at 304-05. The defendants sought to remove Marquette's action to Federal District Court. Marquette responded by dismissing without prejudice its action against Omaha Bank, and the District Court remanded the case to the District Court of Hennepin County. Marquette thereupon moved for partial summary judgment to have Omaha Bank's BankAmericard program declared in violation of Minnesota usury statute, Minn.Stat. § 48.185 and to permanently enjoin the remaining defendants from engaging in any activity in connection with the offering or

operation of that program in further violation of the Minnesota law. Defendants argued that the National Bank Act, Rev.Stat. § 5197, as amended, 12 U.S.C. § 85, preempted Minn.Stat. § 48.185 and enforcement of that statute against Omaha Bank's BankAmericard program. The trial court permanently enjoined the Nebraska bank's subsidiary from issuing credit cards in Minnesota. The Minnesota Supreme Court reversed, ruling that the National Bank Act permitted the Nebraska bank to charge its Minnesota credit card customers an interest rate sanctioned by Nebraska law. On certiorari, the Supreme Court held that the National Bank Act authorized a national bank based in one state to charge its out-of-state credit card customers an interest rate on unpaid balances allowed by its home state, when that rate is greater than that permitted by the state of the bank's nonresident customers. Thus, in *Marquette*, claims were asserted directly against national banks and those banks affirmatively relied upon the National Banking Act. Based upon the facts of that case, the Supreme Court held that the National Bank Act completely preempted the claims asserted by Marquette.

Likewise, in *Stoorman v. Greenwood Trust Co.*, the defendant was a federally-insured, state-chartered bank located in Delaware that issued Discover credit cards. The petitioner was a Colorado resident who became a Discover card member. When Stoorman failed to make a minimum monthly payment on his Discover credit card account, Greenwood assessed a ten-dollar late payment fee to Stoorman's credit card account. *Stoorman*, 908 P.2d at 134. Stoorman initiated a class action, on behalf of himself and all others similarly situated, alleging that Greenwood violated section 5–3–203(5)(a) of the UCC by charging a late payment fee in addition to a finance charge to his Discover credit card account. The district court granted Greenwood's motion for summary judgment, holding that FDIA preempts section § 5-3-203(5)(a) of the Colorado Uniform Consumer Credit Code. *Id.* The Colorado Supreme Court concluded that because Greenwood

6

was a federally-insured, state-chartered bank located in Delaware, and Delaware law permitted the imposition of a late payment fee, Greenwood could asses a late payment fee against Stoorman despite the fact that a Colorado consumer protection law prohibited such fees.  *Id.*  Again, the case involved claims against a state-chartered bank and arguments raised by the defendant that the plaintiff's claims were preempted by FDIA.

Finally, in *Beneficial National Bank v. Anderson*, respondents, who secured loans from petitioner national bank, filed a state-court suit against the bank and two other petitioners, seeking damages on the theory, among others, that the bank's interest rates violated "the common law usury doctrine" and an Alabama usury statute.  The complaint did not refer to any federal law. Petitioners removed the case to Federal District Court, asserting that the National Bank Act governs the interest rate that a national bank may charge, see 12 U.S.C. § 85, that the rates charged to respondents complied with § 85, that § 86 provides the exclusive remedies available against a national bank charging excessive interest, and that respondents' action was therefore one "arising under" federal law that could be removed under 28 U.S.C. § 1441.  *Beneficial*, 539 U.S. at 1.  The District Court denied respondents' motion to remand the case to state court, but certified the question of whether it had jurisdiction to the Eleventh Circuit. In reversing, the latter court held that under the "well-pleaded complaint" rule, removal is not permitted unless the complaint expressly alleges a federal claim, and that the narrow exception known as the complete pre-emption doctrine did not apply because there was no evidence of clear congressional intent to permit removal under §§ 85 and 86.  *Id.*   The question for review by the Supreme Court was "whether an action filed in a state court to recover damages from a national bank for allegedly charging excessive interest in violation of both 'the common law usury doctrine' and an Alabama usury statute  may be removed to a federal court because it actually arises under federal law."  *Id.*

Under the factual circumstances of the case, the Court held that the action could be removed on the basis of complete preemption and the resulting federal question jurisdiction created thereby. Specifically, the Supreme Court explained that "complete preemption may supply a basis for removal jurisdiction where the federal statute[] at issue provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." *Id*. at 8.

The Supreme Court stated that a claim is removable to federal court under the complete preemption doctrine when a federal statute "provide[s] the exclusive cause of action" for the claim. *Id*. at 8. "[T]he proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable." *Id*. at 9 n. 5. The Court emphasized that, under the facts of the case, "the federal statutes at issue...set forth procedures and remedies governing the cause of action." *Id*. at 8, 9. Further supporting a finding of complete preemption under the National Bank Act is the special federal interest in ensuring that national banks are governed by uniform, national rules limiting their liability, and are protected from "possible unfriendly State legislation." *Id*. at 10–11, (internal citations omitted).

The Supreme Court also explained that complete preemption exists only where federal preemption is so strong that "there is ... no such thing as a state-law claim." *Id.* at 11.[3] In determining whether a state law claim is completely preempted, a court must ask whether Congress intended a federal statute to provide "the exclusive cause of action for the claim asserted and also

---

[3] Complete preemption is quite rare. The Supreme Court has recognized complete preemption in only three areas: (1) § 301 of the Labor Management Relations Act, *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); (2) § 502(a) of ERISA, *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); and (3) §§ 85 and 86 of the National Bank Act, *Beneficial*, *supra*.

set forth procedures and remedies governing that cause of action." *Id*. at 8. If so, "the cause of action necessarily arises under federal law and the case is removable." *Id*. at 9.

*Beneficial's* holding is therefore not so broad and only applies to those cases where the National Bank Act is triggered – cases in which a national bank is directly sued for violations of a state law.

### 2. The FDIA Does Not Apply to Actions Against Non-Banks

In the present case, Plaintiff has brought claims against WBL, a non-bank and assignee to the Deed of Trust. The language of § 1831d demonstrates that the statute *only applies to claims brought against a State bank. See, e.g., Meade v. Avant of Colorado, LLC,* 307 F.Supp. 3d 1134 (D. Colo. 2018).

In *Meade*, the Administrator of the Colorado Uniform Consumer Credit Code (Meade) brought an enforcement action in state court alleging that a Colorado supervised lender and non-bank affiliate (Avant), as assignees of loans from a federally insured bank, violated Colorado's statutory limits on excessive finance and delinquency charges as to certain consumer credit loans, and that terms of those loans included an unlawful choice of law provision. Avant removed the action, arguing that the Court had federal subject matter jurisdiction under 28 U.S.C. § 1331, because Congress had completely preempted state law claims at issue in the case. 307 F.Supp.3d at 1137. Avant claimed that Section 27 of the FDIA, as amended by 12 U.S.C. § 1831d, provided the exclusive cause of action for the harm alleged by Meade, allowing Avant to impose finance and delinquency charges in excess of what Colorado law would permit, because Avant's loans were initiated by WebBank (a federally insured bank chartered in Utah, where comparatively permissive usury laws would permit the charges and interest at issue). *Id.* The *Meade* Court held, *inter alia*, that the FDIA did not completely preempt claims brought by Administrator, so as to

9

support removal of the claims to federal court. The Court further held that only a federal preemption affirmative defense, rather than complete preemption, could arise from resolution of allegations by Administrator that federally insured bank, rather than Colorado supervised lender, was the true lender.

At the outset, the *Meade* court analyzed the legal issues relating to the doctrines of "complete preemption" in relation to "ordinary preemption," which "occurs when there is the defense of 'express preemption,' 'conflict preemption,' or 'field preemption' to state law claims." *Id.* at 1140-41. "Express preemption is limited to those situations where a federal statute expressly preempts state law." *Id.* (internal citation omitted). "Conflict preemption contemplates those situations where it is impossible to comply with both federal and state law, and state law creates an obstacle to the congressional intention in enacting a federal statute." *Id.* "By contrast, when complete preemption exists, there is 'no such thing' as the state action, since the federal claim is treated as if it appears on the face of the complaint because it effectively displaces the state cause of action." *Id.* (internal citation omitted). The Court noted that the Supreme Court has recognized complete preemption in only three areas: (1) cases involving § 301 of the Labor Management Relations Act of 1947; (2) § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"); and (3) in actions for usury against national banks under the National Bank Act. *Id*. at 1141. (internal citations omitted).

The Court then turned to the issue of whether the FDIA allows for complete preemption of state law claims. Relying upon recommendations of the magistrate judge set forth in *Colorado Ex Rel. v. Avant of Colorado, LLC*, 2017 WL 9615891 (D. Colo. 12/20/2017), the *Meade* Court noted that the Supreme Court has not resolved "whether the FDIA completely preempts usury claims against state-chartered banks," and further acknowledged that "courts have split" on the question

10

of whether Section 27 completely preempts usury claims against state-chartered banks." *Id.* at 1142 (internal citations omitted). It was further noted that the Court "need not venture into this uncertain territory, because in this case the Administrator has not asserted a claim against a state bank." *Meade*, 307 F. Supp. 3d at 1142, citing *Colorado Ex. Rel., supra,* at 11.

In determining whether FDIA allowed for complete preemption of the Administrator's claims, the *Meade* Court carefully analyzed the language of § 1831d, stating:

> significantly, the relevant text of § 1831d(a) states that '[a] State bank .... may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, ... charge on any loan ... or ... note ... or other evidence of debt, interest at a rate of not more than ... the rate allowed by the laws of the State ... where the bank is located.' 12 U.S.C. § 1831d(a). *This language governs what charges a 'State bank' may impose, but again, does not on its face regulate interest or charges that may be imposed by a non-bank, **including one which later acquires or is assigned a loan made or originated by a state bank**. (emphasis supplied)

> Moreover, the cause of action provided by § 1831d(b), does not on its face apply to actions against non-banks, instead providing a cause of action to 'the person who paid' an excess rate of interest, who then 'may recover in a civil action ... from *such State bank* ....' 12 U.S.C. § 1831d(b). Contrary to Avant's argument that the statute 'makes no distinction' between banks and non-banks, and that its cause of action does not distinguish between bank and non-bank defendants, the statutory text in fact provides for recovery 'from [a] State bank,' but is silent as to any remedy or recovery against a non-bank such as Avant. (emphasis original)

307 F. Supp. 3d at 1144-45. The Court went on to hold that it was not "persuaded that § 1831d reflects Congressional intent to 'completely to displace all state law,' including as to state regulation of lenders who are neither banks chartered in other states nor federally insured, or to displace state regulation of other, similarly situated non-bank defendants who violate state–law lending protections." *Id.* (internal citations omitted).[4]

---

[4] The court noted that numerous court decisions hold that when claims are asserted against a non-bank entity, complete preemption does not apply, even in cases where the non-bank defendant has a close relationship with a state or national

As is made clear from the *Meade* case and supporting case law, the presence of a federal cause of action is essential to a claim of preemption, which is missing in this case. The present case involves a state law claim for usury filed directly against a non-bank. Plaintiff has not asserted any claims against the Bank of Lake Mills. Plaintiff has not asserted any claims under the FDIA, nor does it seek any of the remedies set forth in the statute. Therefore, the statute does not apply and there is no preemption.

### 3. WBL Failed to Assert Federal Preemption as an Affirmative Defense

It should be further noted that at no time has WBL asserted an affirmative defense of preemption. The Answer only asserts the following defenses (1) the parties to the note have agreed the laws of the State of Wisconsin would govern the rate of interest on the Note; (2) the Plaintiff lacks standing to challenge the interest rate on the Note; and (3) there has been a failure to join indispensable parties. In addition, WBL did not raise preemption as a defense in its Motion for Summary Judgement [Doc. # 18] or in its Argument and Memorandum of Law [Doc. # 35]. Avoidance defenses such as federal preemption are waived if not raised in the pleadings. *Schneider*

---

bank. *Id.* (citing *Cmty. State Bank v. Knox*, 523 Fed.Appx. 925, 930 (4th Cir. 2013)("Knox II") (no federal subject-matter jurisdiction where plaintiff did not bring claims against bank); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 296-97 (3d Cir. 2005); *Commonwealth of Pennsylvania v. Think Fin., Inc.*, 2016 WL 183289, at *13 (E.D. Pa. Jan. 14, 2016) ("Think Finance") ("The Third Circuit ... distinguishes between claims against banks and claims against non-banks for purposes of preemption" (citing *Community Bank*, 418 F.3d at 296); "that there are no claims made against a bank is sufficient to avoid preemption"); *Cmty. State Bank v. Knox*, 850 F.Supp.2d 586, 601 (M.D.N.C. 2012) ("*Knox I*") ("[The] Plaintiffs chose to bring claims against only the non-bank entities and have asserted potential claims regardless of whether those entities are the true lenders or only the servicers of the loans at issue. As a result, the state–law claims ... are simply state law claims against non-bank entities, and are not completely preempted by federal law."), aff'd, *Knox II*, 523 Fed.Appx. 925; *Dandy v. Wilmington Fin., Inc.*, 2010 WL 11493721, at *6 (D.N.M. May 3, 2010) ("Plaintiff is not suing ... any .... federal financial institution. The sole Defendant is [a non-bank]. * * * Because the alleged federal nature of Plaintiff's claim is not clear on the face of the Complaint, Defendant is using preemption only as a defense, which is generally not grounds for removal."); *W. Virginia v. CashCall, Inc.*, 605 F.Supp.2d 781, 788 (S.D.W.Va. 2009) ("*CashCall*") ("[T]he State's usury law claim is directed against CashCall, which is not a bank, and therefore, the claim does not invoke and cannot be completely preempted by the FDIA."); *Flowers v. EZPawn Okla., Inc.*, 307 F.Supp.2d 1191, 1196, 1204 (N.D. Okla 2004) (no complete preemption where plaintiff's claims were only brought against non-bank defendants); and *Colorado ex rel. Salazar v. Ace Cash Exp., Inc.*, 188 F.Supp.2d 1282, 1285 (D. Colo. 2002) ("*Ace Cash*" ) ("Defendant and the national bank are separate entities and their relationship does not give rise to complete preemption under the NBA. * * * Defendant's relationship with [a bank] does not elevate Defendant's status to that of a national bank.").

*v. Wilcox Farms, Inc.*, 2008 WL 2367183, at *2 (W.D. Wash. June 6, 2008), citing *DIRECTV, Inc. v. Barrett*, 311 F. Supp. 2d 1143, 1147 (D. Kan. 2004), Fed. R. Civ. P. 8(c); *see also Cook v. Rockwell Intern. Corp.*, 790 F.ed 1088 (10th Cir. 2015) (Court held that, as with most other affirmative defenses, potential preemption defenses are forfeited if not made); (citing *Maudling v. Worldcom, Inc.*, 263 F.3d 1205, 1211) (10th Cir. 2001); *Town of Carbondale v. GSS Properties, LLC*, 169 P.3d 675, 682 (Colo. 2007) (Because a preemption defense based on choice of law is directed to the substance of the applicable law, not to the appropriateness of the judicial forum, such a preemption defense is waivable if it is not timely raised.); *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc*., 693 F.3d 1195, 1204 (10th Cir. 2012) ("[O]rdinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint. Such a defense asserts that the state claims have been substantively displaced by federal law." citing *Geddes v. Am. Airlines, Inc*., 321 F.3d 1349, 1352 (11th Cir.2003); *Hansen v. Harper Excavating, Inc*., 641 F.3d 1216, 1221 (10th Cir.2011), 641 F.3d at 1221 (noting that "ordinary preemption" is "a federal defense to a state-law claim under the Supremacy Clause of the Constitution"); *Brown v. Earthboard Sports USA, Inc*., 481 F.3d 901, 912 (6th Cir. 2007) ("[F]ederal preemption is an affirmative defense upon which the defendants bear the burden of proof.").

As complete preemption is inapplicable in this case, and WBL has never raised the issue of preemption, Plaintiff submits that the issue of preemption should not be considered by the Court.

## C.   Whether Federal Common Law Applies

The Court has inquired as to whether federal common law for choice of law applies, and, if so, what federal common law should be utilized.  To resolve choice of law disputes, courts generally apply federal common law principles when federal question jurisdiction is invoked.

*Weinman v. McCloskey*, 2015 WL 1528896, at *5 (D. Colo. Mar. 31, 2015) (internal citations omitted). A claim may be brought in federal court if the claim is one "arising under the Constitution, laws, or treaties of the United States." *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013). "When determining whether a claim arises under federal law, "we examine the 'well pleaded' allegations of the complaint and ignore potential defenses." *Id.* "[C]ircuit courts have concluded that a federal common law choice-of-law analysis should be conducted when the issue is a federal question, and ... courts have relied upon the Restatement (Second) of Conflicts of the Laws for the content of federal common law." *Id.* (internal citations omitted). In determining a choice of law issue, a federal court must apply the choice of law rules of the jurisdiction in which it is situated. *Dang v. UNUM Life Ins. Co. of America,* 175 F.3d 1186, 1190 (10th Cir.1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). However, when construing and interpreting contracts, a federal Court must look to state law. *In re Centrix Fin.*, LLC, 434 B.R. 880, 884 (Bankr. D. Colo. 2010).

Here, like in most bankruptcy adversary proceedings, both federal and state law are implicated. Plaintiff is seeking relief under 11 U.S.C. §§ 502 and 510, including the determination of the validity, priority and extent of the Proof of Claim and/or liens of WBL against the Property of the estate. Only the §510 claim is one which is governed by federal law through the Bankruptcy Code. Both the §502 and the lien validity/extent claims are determined by reference to state law. Plaintiff is also requesting the Court to interpret and construe agreements, which is an issue governed by state law. Neither §502 nor §510 contain standards regarding appropriateness of interest rate charged in loan documents. *See, e.g., In re Sun*, 535 B.R. 358, 372 (10th Cir. BAP (Colo.) 2015); *Travelers Casualty & Surety Co. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, (2007) (recognizing rule that state law governs the substance of claims in bankruptcy proceedings).

In order to make its determination, it is necessary for the Court to interpret the agreements that are the subject of the Proof of Claim, including the Promissory Note and the Deed of Trust. Based upon case law above, the application of federal common law does not negate the requirement of this Court to apply the choice of law rules of Colorado, as well as to look to state law to construe and interpret the agreements.

**D.      C.R.S. § 4-1-301 Does Not Apply**

In the Order, the Court asks whether any Colorado statutes, including C.R.S. § 4-1-301, govern the choice of law determinations.  (Order at ¶ 5).  The Court further cites to the case of *Woods-Tucker Leasing Corp. of Georgia v. Hutcheson-Ingram Dev. Co.*, 642 F.2d 744 (5th. Cir. 1981), which applied UCC choice of law statute to a usury issue.  *Id.*

Section 4-1-301 provides:  "Person entitled to enforce" an instrument means "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 4-3-309 or 4-3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." A holder of a negotiable instrument means the person entitled to enforce the instrument. See C.R.S. § 4-3-301.

The Uniform Commercial Code covers commercial paper and negotiable instruments. Although a promissory note would be considered a negotiable instrument, the Deed of Trust is a "security instrument containing a grant to a public trustee together with a power of sale." *Fiscus v. Liberty Mortgage Corp*., 2014 COA 79, ¶¶ 47-49, aff'd on other grounds, 2016 CO 31, ¶¶ 47-49, citing C.R.S. § 38-38-100.3(7).  "When a written agreement makes an obligation to pay subject to express conditions, rather than payable on demand, an agreement is not a negotiable

instrument." *Id.,* citing *Reid v. Pyle,* 51 P.3d 1064, 1067 (Colo.App.2002).  Even though the Promissory Note, which is a negotiable instrument under the UCC, is secured by the Deed of Trust, the Deed of Trust does not become a negotiable instrument.  *Id.*  To the contrary, "the UCC does not apply to [a] security interest in realty," and therefore cannot be a negotiable instrument.  *Id.* citing *Haberl v. Bigelow*, 855 P.2d 1368, 1372 (Colo. 1993).

WBL's  Proof of Claim is premised upon the Deed of Trust.  Because a deed of trust is, by definition, a security instrument and not a negotiable instrument, WBL cannot be a holder in due course. *Fiscus*, 2014 COA at 47-49.  Thus, the UCC  is inapplicable to this case.  Nor is Plaintiff aware of any other Colorado statutes (other than the usury statute) that would be applicable.

**E.** **Colorado Has Adopted Sections 187, 188, 195, and 203 of the Restatement (Second) of Conflict of Laws**

Colorado has adopted the Restatement (Second) of Conflict of Laws.  *See, e.g., In re Brock,* 494 B.R. 534, 541 (Bankr. D. Colo. 2013) (Citing Colorado case law, noting Colorado's adoption of § 187 approach to contractual choice of law provisions); *In re Frontier Airlines, Inc.*, 88 B.R. 332, 335 (Bankr. D. Colo. 1998) (Noting Colorado's adoption of the Restatement Second Conflict of Laws and construing § 182); *Becker v. Mktg. & Research Consultants,* 526 F. Supp. 166, 169-70 (D. Colo. 1981) (Construing §§ 188, 195 and 203 to determine which law applied to a promissory note for purposes of determining whether the note was usurious).

Section 187 provides that the law of the state chosen by the parties to govern their contractual rights will be applied unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and

> which under the rule of § 188, would be the state of the applicable
> law in the absence of an effective choice of law by the parties.

*Kipling v. State Farm Mut. Auto. Ins. Co.*, 159 F. Supp. 3d 1254, 1268–69 (D. Colo. 2016). Under

§ 187, Colorado has adopted the "most significant relationship" approach for resolving choice of

law questions in contract actions. *Wright v. Martek Power, Inc.*, 314 F. Supp. 2d 1065, 1067–68

(D. Colo. 2004) (citations omitted). "Under this approach, the law of the state chosen by the

contracting parties to govern their contractual rights and duties will be applied *unless:* "(1) the

chosen state has no substantial relationship to the parties or the transaction and there is no other

reasonable basis for the parties' choice," or (2) "application of the law of the chosen state would

be contrary to a fundamental policy of a state" whose law would govern the parties' dispute in the

absence of an effective choice of law by the parties. *Id., citing* Restatement (Second) of Conflict

of Laws § 187(2). (*See also* Plaintiff's Final Written Arguments at Section III(A)(3), (4), and (5),

incorporated herein by reference.).

Section 188 provides that, absent an effective choice by the contracting parties, the law of

the state that "has the most significant relationship to the transaction and the parties" will control.

In determining which state this is, the court is to consider: (a) the place of contracting, (b) the place

of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter

of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of

business of the parties. *See also Becker v. Mktg. & Research Consultants, supra.* Both the

Promissory Note and Deed of Trust contain choice of law provisions, therefore § 188 does not

apply to this case.

Section 195 provides:

> The validity of a contract for the repayment of money lent
> and the rights created thereby are determined, in the absence
> of an effective choice of law by the parties, by the local law

17

> of the state where the contract requires that repayment be made, *unless*, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied. (emphasis supplied).

Plaintiff anticipates that WBL will argue that 195 applies to this case and that therefore Wisconsin law is controlling because the Promissory Note required, at the time of execution, that repayment was to be made to the Lender (Bank of Lake Mills).  (Trial Ex. 1 at ¶ 3).  However, Plaintiff submits that § 195 is also inapplicable for several reasons.  First, there was no "absence of an effective choice of law by the parties." Second, neither Yosemite nor Rent-Rite were signatories to the Promissory Note.  Third, WBL's lien claim is based upon a Deed of Trust secured by Property located in Colorado.  Lastly, WBL, the assignee of the Deed of Trust, is not located in Wisconsin, but New York, and is seeking repayment of the loan only from Debtor through the Deed of Trust against Colorado Property.   Wisconsin has only a remote and tangential relationship to the transaction.

Assuming *arguendo* that § 195 is applicable, the section dictates that a Court "apply the law of the state with the most significant relationship to the transaction and the parties, as determined by section 188." *Becker*, 526 F. Supp. At 170.  As set forth in Plaintiff's Final Written Arguments, Colorado is the state with the most significant relationship to the transaction.

Section 203 provides: "The validity of a contract will be sustained against the charge of usury if it provides for a rate of interest that is permissible in a state to which the contract has a substantial relationship and is not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law under the rule of § 188."   The term "substantial relationship" is explained in comment c as having a different meaning than the term "most significant relationship" as used in § 188. Under  § 203, "a contract may have a 'substantial

relationship' to two or more states; it can have its 'most significant relationship' to only one." Therefore, § 203 becomes relevant once it is determined that the state with the most significant relationship has a usury law and would invalidate the contract at issue. The contract at issue in the instant case, namely the Deed of Trust, has a substantial relationship only to Colorado and thus, under § 203 of the Restatement (Second) of Conflicts, the validity of the contract and the lien created thereby should be examined under Colorado law.  (*See, e.g.,* Plaintiff's Final Written Arguments at Section III(A)(3), (4), and (5).  Section 203 also furthers the policy set forth in Colorado's law against usury, C.R.S. § 5-12-103(1), which prohibits interest rates on loans greater than 45%. *See* C.R.S. § 5-12-103(1).  Furthermore, under § 203, the Court may also apply Colorado law to determine whether the application Wisconsin's usury law is contrary to a fundamental policy of Colorado, as more fully set forth in Plaintiff's Final Written Arguments, incorporated by reference here.

Thus, application of the Restatement's remaining sections 187, 195 and 203 would lead to the same result, namely that Wisconsin law violates Colorado's fundamental policy against usurious loans, and the Court should apply Colorado law.

**F.**     **Application of § 187 of the Restatement (Second) of Conflicts of Laws**

In its Order, the Court asks that, if § 187 of the Restatement applies, "how is the Court to determine which policies (or statutes) are "fundamental" and which policies (or statutes) are not "fundamental?"  (Order at ¶ 8).  Plaintiff incorporates by reference the arguments set forth in its Final Written Arguments at Section III(A)(3), (4), and (5).

**G.**     **Wisconsin Law Does not Govern the Substantive Issue of the Applicable Interest Rate and Usury**

The Order asks, "if Wisconsin law governs the substantive issue of the applicable interest rate and usury, is the Promissory Note usurious under Wisconsin law?"  As set forth more fully in

Plaintiff's Final Written Arguments, Plaintiff denies that Wisconsin Law governs in this case. This case is governed by the law of Colorado, where the Property is located, as unambiguously provided in the Deed of Trust. As set forth in Section III(A)(4) of Plaintiff's Final Written Arguments, application of Wisconsin's usury law is contrary to Colorado fundamental policy against usurious interest.

Colorado law prohibits interest rates on commercial loans greater than forty-five (45%) per annum. *See* C.R.S. § 5-12-103(1). Section 138.05(1)(a) of the Wisconsin statute states: "Except as authorized by other statutes, no person shall, directly or indirectly, contract for, take or receive in money, goods or things in action, or in any other way, any greater sum or any greater value, for the loan or forbearance of money, goods or things in action, than…[a]t the rate of $12 upon $100 for one year computed upon the declining principal balance of the loan or forbearance." However, § 138.05(5) states that the "section shall not apply to loans to corporations or limited liability companies." Therefore, in Wisconsin, there is no limit on the interest rate chargeable to a corporation or limited liability company. Under Wisconsin law, the interest rate charged in the Promissory Note is allowable. The allowable interest rate to be charged against a corporation or limited liability company in Colorado is 45%. Plaintiff asserts that, assuming *arguendo*, Wisconsin law applies (it does not), the unlimited interest rate allowed under the Wisconsin statute is at odds with the strong public policy embodied by the Colorado usury statute. Therefore, the 120.86% interest rate allowed in the Promissory Note, and which WBL seeks to enforce against the Property under the Deed of Trust, violates Colorado's public policy, as the Deed of Trust incorporates an interest rate in excess of the 45% allowed under § 5-12-103.

In addition, it would be inequitable to allow for an excessive interest rate to be imposed, which interest rate serves as a penalty as against other creditors, and particularly unsecured

creditors.  *See, e.g., In re Hollstrom*, 133 B.R. 535, 539 (Bankr. D. Colo. 1991) (Court determined that oversecured creditor was not entitled to a 36% default rate of interest as imposition of the default rate could conflict with equitable principles applicable in a bankruptcy proceeding.)[5]

### III.   CONCLUSION

WHEREFORE, Plaintiff Rent-Rite Super Kegs West, Ltd hereby prays for the following relief:

A.   An Order determining the validity, priority, and extent of the claims and/or liens of Defendant World Business Lenders, LLC against the Property of the Plaintiff;

B.   An Order disallowing the Proof of Claim filed by Defendant World Business Lenders, LLC;

C.   An Order equitably subordinating the claims and/or liens of Defendant World Business Lenders, LLC against the Property of the Plaintiff.  Or, in the alternative, an Order that any lien securing such a subordinated claim be transferred to the estate;

D.   An award of post-judgment interest at the maximum legal rate;

E.   An award of costs of suit and attorney's fees as provided by law; and

F.   Any further relief in favor of Plaintiff that this Court deems just and appropriate.

---

[5] Although the issue in the *Hollstrom* decision was whether the secured creditor is entitled to a thirty-six percent (36%) default rate of interest on its oversecured claim pursuant 11 U.S.C. § 506(b), the reasoning behind the decision is equally applicable to the within case.  The Court in *Hollstrom* stated that usually "the court should apply the contract rate, but it has the power to apply a different rate depending upon equitable considerations," as well as considerations where the contracted interest rate violates state law.  *Id.*, at 539, citing *In re Schaumburg Hotel Owner Ltd. Partnership*, 97 B.R. 943, 951 (Bankr.N.D.Ill.1989) ("A court should allow contractually bargained for default interest rate [sic] without examining the reasonableness of these rates provided they fall within the range of acceptable rates ... the default rate here was not shown to fall outside the range of default rates applied commercially, nor does it shock the conscience of the Court.") (emphasis added). *In re Presque Isle Apartments, L.P.*, 109 B.R. 687, 689 (Bankr.W.D.Pa.1990) ("It is not illegal to provide for a higher rate of interest after maturity, but if such rate is unconscionably high, it will be unenforceable because it amounts to a penalty. [Citations omitted.] To allow the Bank interest at the criminal usury rate would clearly be unconscionable and unenforceable as a penalty.") (The criminal usury rate in New Jersey, the law at issue, was 50% for a corporation and 30% for an individual).

DATED this 1st day of April 2019.

Respectfully submitted,

/s/ Patrick D. Vellone
Patrick D. Vellone, #15284
Jennifer E. Schlatter, #30626
1600 Stout Street, Suite 1100
Denver, Colorado 80202
Ph: 303-534-4499
pvellone@allen-vellone.com
mlarson@allen-vellone.com

ATTORNEYS FOR RENT-RITE SUPER KEGS WEST, LTD.

## CERTIFICATE OF SERVICE

I hereby certify that on this the 1st day of April 2019, I caused the foregoing **PLAINTIFF RENT-RITE SUPER KEGS WEST LTD'S SUPPLEMENTAL BRIEF PURSUANT TO COURT ORDER DATED MARCH 13, 2019 [DOC. #37]**, to be served by CM/ECF pursuant to L.B.R. 5005-4(a), to the following:

Phillip J. Jones, Esq.
744 Horizon Court, Suite 115
Grand Junction, CO  81506


/s/Victoria Ray
Allen Vellone Wolf Helfrich & Factor P.C.